**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| TAMARA MCCORMICK et al.,<br><br>     Plaintiffs,<br><br>  v.<br><br>PRUDENTIAL INSURANCE COMPANY<br>OF AMERICA,<br><br>     Defendant. | Case No: 3:10-cv-03107-MPM-BGC<br><br>**Judge Michael P. McCuskey**<br>**Magistrate Judge Byron G. Cudmore** |

**DEFENDANT THE PRUDENTIAL INSURANCE COMPANY OF AMERICA'S**
**AMENDED PARTIAL ANSWER AND AFFIRMATIVE DEFENSES TO**
**PLAINTIFF'S COMPLAINT**

Defendant, The Prudential Insurance Company of America, incorrectly named Prudential Insurance Company of America ("Prudential"), by its undersigned counsel, for its Partial Answer and Affirmative Defenses to Plaintiffs Tamara McCormick and Dirk McCormick's ("Plaintiffs") Complaint, states as follows:

Federal Rule of Civil Procedure 8(a)(2) states, in pertinent part, that a pleading that sets forth a claim for relief shall provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Moreover, Rule 8(e)(1) states that "[e]ach averment of a pleading shall be simple, concise, and direct." Plaintiff's Complaint violates these provisions as it contains partial quotes and unnecessary advocacy. In answering Plaintiff's Complaint, Prudential only is required to address the averments upon which Plaintiff relies to allegedly state a claim.

## COMMON ALLEGATIONS

### *Jurisdiction and Venue*

1.      Plaintiffs, TAMARA MCCORMICK ("Tamara") and DIRK MCCORMICK ("Dirk") are residents of Riverton, Sangamon County, Illinois, and have been, without exception, since 1989.

**ANSWER**:  Prudential lacks sufficient information to determine the truth or falsity of the

allegations set forth in Paragraph 1 of Plaintiff's Complaint, and therefore these allegations stand

denied.

2.      Defendant, PRUDENTIAL INSURANCE COMPANY OF AMERICA ("Prudential") is a publicly traded insurance and asset management corporation with its primary place of business located in Newark, Essex County, New Jersey, and transacts business in Illinois and insures many Illinois citizens.

**ANSWER**:  Prudential admits that it is a corporation organized and incorporated in the

State of New Jersey and that it conducts business in Illinois. Prudential denies that The

Prudential Insurance Company of America is a publicly-traded company, except admits that its

ultimate parent Prudential Financial, Inc. is a publicly-traded company.  All other allegations of

Paragraph 2 stand denied.

3.      Jurisdiction of this Court is founded upon diversity of citizenship pursuant to 28 U.S.C. §§ 1332.

**ANSWER**:   Prudential admits the allegations set forth in Paragraph 3 of Plaintiffs'

Complaint.

4.      Pursuant to 28 U.S.C. 1391(b), venue is proper within the Springfield Division of the Central District of Illinois because Plaintiffs are residents of Riverton, Sangamon County, Illinois and most of the facts alleged occurred in and the contract was entered into in Sangamon County, Illinois.

**ANSWER**:   Prudential admits that venue is proper, but denies the remaining

allegations set forth in Paragraph 4 of Plaintiffs' Complaint.

***Tamara's Family, Education and Employment***

5.     Tamara was born March 17, 1963 and she has been married to Dirk since 1988. They have four children.

**ANSWER**:     Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 5 of Plaintiffs' Complaint, and therefore these allegations stand denied.

6.     Tamara is a graduate of Mattoon High School and Eastern Illinois University.

**ANSWER**:     Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 6 of Plaintiffs' Complaint, and therefore these allegations stand denied.

7.     Tamara worked at Franklin Life Insurance Company ("Franklin") from 1985 until 1997. Tamara's last position at Franklin was Information Services Training Manager.

**ANSWER**:     Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 7 of Plaintiffs' Complaint, and therefore these allegations stand denied.

8.     On or about May 17, 1997, Tamara began working for the University of Illinois at Springfield ("UIS") as an Office of Business and Financial Services ("OBFS") Training Coordinator. A job description is attached hereto as Document 0893-94 of Exhibit 6.

**ANSWER**:     Prudential admits that Plaintiffs' Complaint attaches a purported job description as Exhibit 6.  This document speaks for itself.  Prudential lacks sufficient information to determine the truth or falsity of the remaining allegations set forth in Paragraph 8 of Plaintiffs' Complaint, and therefore those allegations stand denied.

9.     The Prudential Insurance Company of America is one of the largest diversified financial institutions in the world. It advertises and holds itself out as being one of the largest group life and disability carriers in the U.S.A. with over 5,100 long term disability clients covering more than 12.3 million lives. Prudential advertises that it maintains a culture within the company that is highly moral, making decisions based on doing the right thing in the right way for the right reasons. Prudential and its agents have years of experience in designing and

administering various products, and handling claims and appeals concerning its Long Term Disability Insurance products.

**ANSWER**:    Prudential admits that it is a corporation organized and incorporated in the State of New Jersey.  Prudential further admits that it advertises.  Prudential's advertisements speak for themselves.  Prudential also admits that, among other products, it offers Group Long Term Disability Insurance products.  All other allegations of Paragraph 9 stand denied.

10.    At all times mentioned herein, Tamara and Dirk were lay persons with little or no expertise in the purchase of long term disability insurance products.

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 10 of Plaintiffs' Complaint, and therefore these allegations stand denied.

11.    At all times herein Tamara and Dirk placed their confidence and trust in the actions and representations of Prudential because of its size, expertise, experience in the creation, billing, servicing, claims handling, appeal procedures of its supplemental long term disability insurance.

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 11 of Plaintiffs' Complaint, and therefore these allegations stand denied.

12.    At all times mentioned in this Complaint, Prudential had a statutory duty:

a.    To avoid knowingly misrepresenting to members relevant facts and policy provisions relating to coverage, 215 ILCS § 5/154.6(a).
b.    To acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies, 215 ILCS § 5/154,6(b).
c.    To adopt and implement reasonable standards for the prompt investigation and settlement of claims, 215 ILCS § 5/154.6c(c).
d.    To attempt in good faith to effectuate fair and equitable settlement of claims in which liability has become reasonably clear, 215 ILCS § 5/154.6(d).
e.    Not to compel insureds to institute suit to recover amounts due on its long term disability policy by offering substantially less than the amounts they could ultimately recover by filing suit, 215 ILCS 5/154.6(e).
f.    Not to engage in activity which results in a disproportionate number of meritorious complaints against the insurer received by State Insurance Department, 215 ILCS § 5/154.6(f).

g.     Not to engage in activity which results in a disproportionate number of lawsuits to be filed against the insurer or its insureds by claimants, 215 ILCS 5/154.6(g).

h.     To conduct a reasonable investigation based on all available information prior to determining whether to deny a claim, 215 ILCS § 5/154.6(h).

i.     To fully affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.

j.     In case of the denial of a claim, to promptly provide a reasonable and accurate explanation of the basis in the insurance policy or applicable law for such denial, 215 ILCS § 5/154.6(n).

**ANSWER**:     The allegations of Paragraph 12 of Plaintiffs' Complaint and all subparts thereof are conclusions of law to which no response is required from Prudential. To the extent any response is required to the allegations of Paragraph 12, those allegations stand denied.

13.     All acts, omission, contacts, representations, correspondence by Prudential as alleged in this Complaint were made by its management employees or agents, acting within the scope of their employment and all such acts were authorized, ratified or approved by Prudential.

**ANSWER**:     The allegations of Paragraph 13 of Plaintiffs' Complaint are conclusions of law to which no response is required from Prudential, except Prudential admits that Prudential's employees were acting within the scope of their employment. To the extent any further response is required to the allegations of Paragraph 13, those allegations stand denied.

### *Purchase of the Policy*

14.     When hired, Tamara was told by a UIS representative that depending on her length of service, she would not be eligible to receive Social Security Disability Benefits if she became disabled.

**ANSWER**:     Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 14 of Plaintiffs' Complaint, and therefore these allegations stand denied.

15.     A representative of UIS told Tamara (1) that if she became disabled, she would be eligible to receive State University Retirement System ("SURS") disability benefits and (2) if she elected to do so, she could purchase supplemental disability insurance through a private, employer-selected provider that would supplement any SURS disability benefits.

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of

the allegations set forth in Paragraph 15 of Plaintiffs' Complaint, and therefore these allegations

stand denied.

16.     Tamara was provided with copies of marketing materials advertising the University of Illinois' selected supplemental group long-term disability insurance program underwritten by Fortis Insurance Companies.  Under this policy, it defined disability as follows:

How is DISABILITY defined in order to qualify for benefits?

There are two tests used to determine if you are disabled. You need to satisfy only one of these.

A. OCCUPATION TEST

During the first 60 months of disability, you will be considered disabled if you are under the care of a licensed physician (other than yourself) and are unable to perform one or more of the material duties of your regular occupation due to a covered illness, injury or pregnancy. After the first 60 months of disability, you will continue to be considered disabled if you cannot perform at least one of the material duties of each gainful occupation for which your education, training, and experience may qualify you.

B. EARNINGS TEST

If you do not qualify as disabled as defined above, you may also be considered disabled in any month in which you are working, but an injury, sickness or pregnancy prevents you from earning more than 80% of your basic monthly earnings prior to becoming disabled, (See Exhibit 2, SURS FOIA Response 255 — 259)

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 2 a

document pertaining to long-term disability insurance coverage provided through Fortis

Insurance Companies.  This document speaks for itself.  Prudential lacks sufficient information

to determine the truth or falsity of the remaining allegations set forth in Paragraph 16 of

Plaintiffs' Complaint, and therefore those allegations stand denied

17.    In reasonable reliance on the representations made in the aforementioned marketing materials, Tamara elected to purchase the employer- selected supplemental disability insurance policy on or about her employment start date at UIS.

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 17 of Plaintiffs' Complaint, and therefore these allegations stand denied.

18.    Tamara paid all premiums due on the policy by having them deducted from her UIS pay.

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 18 of Plaintiffs' Complaint, and therefore these allegations stand denied.

19.    On or about December 17, 2001, SURS replaced Fortis as the Long Term Disability Insurance Carrier with Policy Number 92631 or 92630 issued by Prudential Insurance Company. (See Exhibit 1, SUM FOIA Response 3-39)

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 1 a document pertaining to Prudential "Group Contract Number DG- 92631-IL" for "Contract Holder: State Universities Retirement System of Illinois."  Prudential further admits that it issued Group Long-Term Disability Policy No. DG-92630-IL to the University of Illinois (the "Policy").  These documents speaks for themselves.  Prudential lacks sufficient information to determine the truth or falsity of the remaining allegations set forth in Paragraph 19 of Plaintiffs' Complaint, and therefore those allegations stand denied.

20.    Prudential represented to SURS that the Long Term Disability Policy issued by Fortis remained materially unchanged and that the only change was that Prudential would service it.

**ANSWER**:    Prudential denies the allegations of Paragraph 20 of Plaintiffs' Complaint.

21.    Prudential never required that Tamara re-enroll or otherwise gave her notice of any change in the benefits of the policy or the definition of the term "Disability."

**ANSWER**:    Prudential lacks sufficient information to admit or deny the allegations in Paragraph 21 of Plaintiffs' Complaint with respect to Plaintiffs' generic, undefined use of the terms "policy" and "re-enroll."  Further, to the extent the allegations of Paragraph 21 imply that Prudential failed to perform an act legally required by Prudential with respect to Plaintiffs, these allegations stand denied.  All other allegations of Paragraph 21 of Plaintiffs' Complaint stand denied in the form and manner stated.

22.    Prudential Policy 92631 or 92630 defines a person as being disabled when Prudential determines that:

- you are unable to perform the **material and substantial** duties of your **regular occupation** due to your **sickness** or **injury**; and

- you have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury**

After 60 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience

**Material and substantial duties** means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified.

**Regular occupation** means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

**Gainful occupation** means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 66 2/3% of your indexed monthly earnings within 12 months of your return to work.

**Sickness** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

**ANSWER**:    Prudential admits that the Policy includes a definition of "Disability."  The Policy speaks for itself.  To the extent the allegations of Paragraph 22 of Plaintiffs' Complaint are inconsistent with the content of the Policy, those allegations stand denied.

23.    Prudential failed to inform Tamara that its Policy contained a different definition of the term "Disability" which an insured would have to satisfy in order to be eligible for benefits under its Policy 92630 or 92631. The qualifications for benefits under the Prudential Policy are more stringent than under the Fortis Policy, and this fact was one that a reasonable person would have wanted to know before continuing to participate and pay premiums on the Prudential Policy.

**ANSWER**:    Prudential admits that the Policy includes a definition of "Disability."  The Policy speaks for itself.  To the extent the allegations of Paragraph 23 of Plaintiffs' Complaint are inconsistent with the content of the Policy or imply that Prudential failed to perform an act legally required by Prudential with respect to Plaintiffs, those allegations stand denied. Prudential lacks sufficient information to determine the truth or falsity of the remaining allegations set forth in Paragraph 23 of Plaintiffs' Complaint, and therefore these allegations stand denied.

24.    Not knowing that Prudential would apply its more stringent definition of "Disability", Tamara continued to pay premiums on her Prudential Policy at all times mentioned herein.

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 24 of Plaintiffs' Complaint, and therefore these allegations stand denied.

### *Health History*

25.     Tamara was born March 17, 1963, with partial anomalous pulmonary venous drainage, and a secundum atrial septal defect, both of which are congenital heart defects.

**ANSWER**:     Prudential lacks sufficient information to determine the truth or falsity of

the allegations set forth in Paragraph 25 of Plaintiffs' Complaint, and therefore these allegations

stand denied.

26.     In 1968, at age five, Tamara underwent open-heart surgery to place a baffle to function as an artificial wall in her heart to address these defects. Because the baffle did not grow as Tamara did, she began suffering from extended bouts of pneumonia. In 1973, at age ten, a second surgery was done and a new baffle placed. By the time this procedure was completed, some damage to Tamara's right lung had already occurred. Over the years, these conditions have resulted in her having diminished stamina and chronic fatigue.

**ANSWER**:     Prudential lacks sufficient information to determine the truth or falsity of

the allegations set forth in Paragraph 26 of Plaintiffs' Complaint, and therefore these allegations

stand denied.

27.     The above type of open-heart surgery increased Tamara's future susceptibility to atrial fibrillation.

**ANSWER**:     Prudential lacks sufficient information to determine the truth or falsity of

the allegations set forth in Paragraph 27 of Plaintiffs' Complaint, and therefore these allegations

stand denied.

28.     Since the birth of Tamara's twin daughters in 1997, Tamara has suffered from periodic atrial fibrillation.

**ANSWER**:     Prudential lacks sufficient information to determine the truth or falsity of

the allegations set forth in Paragraph 28 of Plaintiffs' Complaint, and therefore these allegations

stand denied.

29.     At all times mentioned herein, Tamara's congenital heart condition has caused her to have life-long diminished cardiac performance.

a.     Tamara's Max V02 has been tested by one of the leading Cardiologists and heart care specialists in the U.S.A., Dr. Philip Ludbrook of Washington University

School of Medicine, and was found to be significantly reduced to 17.3 ml/kg/minutes which means her maximum cardiopulmonary exercise capacity is about 58% of the normal average,

b.  This VO2 study showed Tamara suffered from three abnormalities: (1) a severely reduced cardiopulmonary exercise capacity of about 58% of normal; (2) a very inadequate heart rate response, and; (3) a very inadequate blood pressure response.

c.  Dr. Ludbrook has opined that Tamara's results of the V02 test and other tests placed Tamara in what the New York Heart Association describes as a Class III cardiac function. NYHA prescription of physical activities for Class III patients such as Tamara are for them to have marked limitation of activity; they are comfortable only at rest

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of

the allegations set forth in Paragraph 29 of Plaintiffs' Complaint and all subparts thereof, and

therefore these allegations stand denied.

30.    In 2004, Tamara was seen by Dr. Steven Horvath, a Rheumatologist,   who evaluated her in accordance with the American College of Rheumatology's 1990 Criteria for the Classification of Fibromyalgia and diagnosed her with Fibromyalgia Syndrome ("FMS").

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of

the allegations set forth in Paragraph 30 of Plaintiffs' Complaint, and therefore these allegations

stand denied.

31.    FMS is defined by chronic widespread muscular pain and tenderness. FMS can be accurately diagnosed based on a patient's self-reported symptoms, physical examination for pain and tenderness, and the elimination of other possible causes. FMS can be accurately diagnosed based on a patient's self-reported subjective symptoms, physical examination for pain and tenderness, and the elimination of other possible causes.

**ANSWER**:    The allegations of Paragraph 31 of Plaintiffs' Complaint purport to set

forth a definition of Fibromyalgia.  Prudential lacks sufficient information to determine the truth

or falsity of these allegations because the source of the purported definition is not stated, and

therefore these allegations stand denied.

32.    In the Spring of 2004, Tamara's treating physician diagnosed that her physical condition is the result of her Fibromyalgia, organic heart disease, depression and vertigo and that she is not malingering.

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 32 of Plaintiffs' Complaint and therefore these allegations stand denied.

### *Application for Disability*

33.    By August 10, 2004, Tamara's deteriorating health caused her to seek disability benefits from SURS.

**ANSWER**:    Prudential admits that Plaintiff Tamara McCormick applied for disability benefits from the State Universities Retirement System of Illinois.  Prudential lacks sufficient information to determine the truth or falsity of the remaining allegations set forth in Paragraph 33 of Plaintiff's Complaint, and therefore these allegations stand denied.

34.    SURS granted Tamara's request for disability benefits effective July 11, 2004.

**ANSWER**:    Prudential admits that the State Universities Retirement System of Illinois determined that Plaintiff was eligible for disability benefits beginning on July 11, 2004.  All other allegations of Paragraph 34 stand denied.

35.    On or about August 16, 2004, Tamara submitted a claim to Prudential for supplementary disability under the policy at issue in this dispute. At all times mentioned herein, Prudential Claim Consultants Nancy L. Pichette and Rebecca Gadbois were employees or agents of Prudential acting within the scope of their employment.

**ANSWER**:    Prudential admits that in August of 2004, Plaintiff submitted a claim to Prudential pursuant to the Policy.  Prudential further admits that Nancy L. Pichette and Rebecca Gadbois were employees or agents of Prudential acting within the scope of their employment. To the extent any response is required to the remaining allegations of Paragraph 35 of Plaintiffs' Complaint, those allegations stand denied.

36.    On August 27, 2004, Prudential sent to Tamara forms to be completed and returned to Prudential no later than September 13, 2004. One of the documents she was to submit was a diary of her daily activities.

**ANSWER**:    Prudential admits that on August 27, 2004, it sent a letter and certain forms to Plaintiff Tamara McCormick.  The content of those documents speak for themselves. To the extent the remaining allegations in Paragraph 36 of Plaintiffs' Complaint are inconsistent with those documents, those allegations stand denied.

37.    On September 8, 2004, Prudential sent Tamara a letter advising her

a.    that to qualify as disabled she must be "unable to perform the material and substantial duties of your regular occupation due to your sickness and injury," and "have a 20% or more loss in your indexed monthly earnings due to that sickness or injury."

b.    that Tamara would be disabled if after 60 months she was "unable to perform the duties of any gainful occupation."

c.    that Prudential "may require you to be examined by doctors, other medical practitioners or vocational experts of our choice."

d.    "we expect to make a decision on your claim by September 27, 2004, provided the requested medical information is received," (See Exhibit 3, 0873-0874)

**ANSWER**:    Prudential admits that Plaintiff's Complaint attaches as Exhibit 3 a copy of a letter from Prudential to Plaintiff Tamara McCormick dated September 8, 2004.  That letter speaks for itself.  To the extent the remaining allegations in Paragraph 37 of Plaintiffs' Complaint and all subparts thereof are inconsistent with the content of that letter, those allegations stand denied.

38.    On September 17, 2004, Tamara's husband, Dirk, faxed to Prudential the daily diary it had requested on August 2004. (See Exhibit 4, 0875-0881).

**ANSWER**:    Prudential admits that Plaintiff's Complaint attaches as Exhibit 4 a copy of a facsimile dated September 17, 2004.  That facsimile speaks for itself.  To the extent the remaining allegations in Paragraph 38 of Plaintiffs' Complaint are inconsistent with the content of that facsimile, those allegations stand denied.

39.    On September 28, 2004, Cynthia Bochniak of Prudential sent Tamara a letter denying her claim stating that "a review of the medical records obtained from [Tamara's physicians] does not support a disabling impairment throughout your elimination period." (See Exhibit 5, 0882-0886).

**ANSWER**:    Prudential admits that Plaintiff's Complaint attaches as Exhibit 5 a copy of letter from Prudential to Plaintiff Tamara McCormick dated September 28, 2004.  That letter speaks for itself.   To the extent the remaining allegations in Paragraph 39 of Plaintiffs' Complaint are inconsistent with the content of that letter, those allegations stand denied.

40.    Prior to denying Tamara's claim on September 28, 2004, Prudential

a.    did not thoroughly investigate all bases for the granting of coverage for Tamara's claim before denying her benefits.
b.    did not seek any independent review or evaluation of Tamara's medical records.
c.    did not require, request or offer that Tamara be physically examined by a physician of Prudential's choosing.
d.    did not diligently search for evidence which supported Tamara's claim and did not contact witnesses such as her supervisor and gather information favorable to Tamara's claim.

**ANSWER**:    Prudential denies the allegations in Paragraph 40 of Plaintiffs' Complaint and all subparts thereof except states that under the terms and conditions of the Policy, Prudential was not required to have Plaintiff Tamara McCormick examined by a physician of Prudential's choosing prior to September 28, 2004. Prudential admits it did not do so. Prudential evaluated Plaintiff Tamara McCormick's claim pursuant to the terms and conditions set forth in the Policy.

41.    In Exhibit 5, Prudential informed Tamara:

a.    that she "had a right to appeal this decision" within 180 days, and that "if your appeal is denied, you may seek a second appeal." Prudential further informed Tamara that "if our decision to deny benefits is upheld at the second level of appeal, you may file a voluntary third appeal."
b.    she was "entitled to receive upon request, sufficient information to make a decision about filing this [third] appeal."

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 5 a copy of a letter from Prudential to Plaintiff Tamara McCormick dated September 28, 2004.  That letter

speaks for itself. To the extent the remaining allegations in Paragraph 41 of Plaintiffs' Complaint and all subparts thereof are inconsistent with the content of that letter, those allegations stand denied.

42.    On March 20, 2005, within the time frame allotted, Tamara appealed Prudential's September 28, 2004 denial of her claim. (See Exhibit 6, 0890-0908)

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 6 a copy of certain documents purportedly sent to Prudential including, but not limited to, a letter dated March 20, 2005 from Plaintiff Tamara McCormick to Prudential. Those documents speak for themselves. To the extent the remaining allegations of Paragraph 42 of Plaintiffs' Complaint are inconsistent with the content of the documents, those allegations stand denied.

43.    On April 1, 2005, Prudential sent Tamara a letter: (See Exhibit 7, 0909)

a.    stating that Prudential had received her "request for reconsideration." The document makes no reference to the fact that this was purportedly an "appeal."
b.    included more forms for Tamara to complete and return to Prudential — this time "immediately."

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 7 a copy of letter from Prudential to Plaintiff Tamara McCormick dated April 1, 2005. That letter speaks for itself. To the extent the remaining allegations of Paragraph 43 of Plaintiffs' Complaint and all subparts thereof are inconsistent with the content of that letter, those allegations stand denied.

44.    On April 26, 2005, Prudential sent Tamara a letter (See Exhibit 8, 0911-0914) stating: "we have determined that you are eligible for LTD benefits and have allowed your claim."

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 8 a copy of letter from Prudential to Plaintiff Tamara McCormick dated April 26, 2005. That letter speaks for itself. To the extent the remaining allegations of Paragraph 44 of Plaintiffs' Complaint are inconsistent with the content of that letter, those allegations stand denied.

45.    The information in the letter (Exhibit 8) is false, if not greatly misleading, in that Prudential failed to inform Tamara that within 75 days it intended to review her claim without any evidence that there would be a change in her physical or emotional disability. The purpose of this future review by Prudential was to find a reason to terminate her benefits. Further, Exhibit 8 fails to include or provide an explanation of the facts or basis for Prudential's reversal of its earlier denial of Tamara's claim.

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 8 a copy of

the  letter from Prudential to Plaintiff Tamara McCormick dated April 26, 2005.  That letter

speaks for itself.  Prudential denies the remaining allegations contained in Paragraph 45 of

Plaintiffs' Complaint.

46.    On April 26, 2005, Prudential sent Tamara another letter requesting that she apply for Social Security Disability Income Benefits if she had not done so already, and to provide proof that she had done so to Prudential.

**ANSWER**:    Prudential admits that it sent Plaintiff Tamara McCormick a letter on

April 26, 2005.  That letter speaks for itself.  To the extent the remaining allegations of

Paragraph 46 of Plaintiffs' Complaint are inconsistent with the content of that letter, those

allegations stand denied.

47.    Even though Prudential knew or should have known that Tamara was not eligible for Social Security Disability Benefits, on June 2, 2005, Rebecca Gadbois, Prudential's disability consultant, spoke with Tamara on the phone and informed her that she needed to apply for Social Security Disability Benefits and provide copies of the result of her application to Prudential.

**ANSWER**:    Prudential admits that on June 2, 2005, a telephone conversation took

place between Rebecca Gadbois and Plaintiff Tamara McCormick during which applying for

Social Security Disability Benefits, among other things, was discussed. The remaining

allegations of Paragraph 47 of Plaintiffs' Complaint stand denied.

48.    Prudential began paying Tamara disability benefits, but on June 14, 2005, sent a letter to Tamara stating: (a) that due to a mistake in calculating her benefits, Prudential had overpaid Tamara by $7,306.32 and thereby demanding that she pay back the amount in full within 30 days or have future benefits "withheld." (See Exhibit 9, 0917-0918).

**ANSWER**:    Prudential admits that it paid Plaintiff disability benefits for a certain period of time.  Prudential further admits that Plaintiffs' Complaint attaches as Exhibit 9 a copy of a letter from Prudential to Plaintiff Tamara McCormick dated June 14, 2005.  That letter speaks for itself.  To the extent the remaining allegations of Paragraph 48 of Plaintiffs' Complaint are inconsistent with the content of that letter, those allegations stand denied.

49.    Tamara understood Prudential's June 14, 2005 letter (Exhibit 9) to mean that inaction on her part would result in Prudential "withholding" future benefits until it recouped the amount it erroneously paid her, and therefore it required no response with regard to the overpayment.

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 49 of Plaintiffs' Complaint, and therefore these allegations stand denied.

50.    On or before June 15, 2005, Social Security orally informed Tamara that she was not eligible for Social Security Disability Benefits.

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 50 of Plaintiffs' Complaint, and therefore these allegations stand denied.

51.    On June 15, 2005, Tamara sent via U.S. mail to Prudential, a packet of information requested by Prudential including (1) a supplemental statement; (2) HIPAA Authorization; (3) reimbursement agreement. Tamara wrote by hand on the bottom of one of these documents that she had been informally told by Social Security that she was not eligible for benefits, that she had not received the letter confirming this decision but she would forward it to Prudential when she received it. (See Exhibit 10, 1280-1287).

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 10 copies of documents purportedly sent to Prudential on June 15, 2005. These documents speak for

themselves.  To the extent the remaining allegations of Paragraph 51 of Plaintiffs' Complaint are inconsistent with the content of those documents, those allegations stand denied.

52.    Even though Prudential knew or should have known Tamara was not eligible for Social Security Benefits Prudential requested that, within 30 days, Tamara provide them with a signed reimbursement agreement as well as proof that she had applied for Social Security Disability Benefits. The June 20, 2005, letter states that failure to comply with Prudential's demands would result in payments being "suspended." (See Exhibit 11, 0919-0920). Prudential received the requested documents on June 20, 2005. (See receipt statement on Document No. 1280 of Exhibit 10).

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 11 a copy of a letter from Prudential to Plaintiff Tamara McCormick dated June 20, 2005.  Prudential further admits that Plaintiffs' Complaint attaches as Exhibit 10 copies of documents purportedly sent to Prudential on June 15, 2005.  Those documents speak for themselves.  To the extent the remaining allegations of Paragraph 52 of Plaintiffs' Complaint are inconsistent with the contents of those documents, those allegations stand denied.

53.    Upon receipt of Prudential's June 20, 2005 letter, (Exhibit 11) informing Tamara that her disability payments could be suspended until she submitted written proof of her SSDI denial, she had already forwarded the other documents via Exhibit 10.

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 11 a copy of a letter from Prudential to Plaintiff Tamara McCormick dated June 20, 2005.  Prudential further admits that Plaintiffs' Complaint attaches as Exhibit 10 copies of documents purportedly sent to Prudential on June 15, 2005.  Those documents speak for themselves.  Prudential lacks sufficient information to determine the truth or falsity of the remaining allegations set forth in Paragraph 53 of Plaintiffs' Complaint, and therefore those allegations stand denied.

54.    Prudential's June 20, 2005 letter (Exhibit 11) did not inform Tamara that failing to provide written documentation of her SSDI denial requested would result in her file being closed and her benefits terminated.

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 11 a copy

of a letter from Prudential to Plaintiff Tamara McCormick dated June 20, 2005.  That letter

speaks for itself.  To the extent the remaining allegations of Paragraph 54 of Plaintiffs'

Complaint are inconsistent with the contents of that letter, those allegations stand denied.

55.    On June 27, 2005, even though Prudential knew Tamara was not eligible for Social Security, it sent a letter to UIS informing them that Tamara had not yet submitted proof of application for SSDI. (See Exhibit 13; 0921-0924), The letter states that compliance with this demand was necessary "to avoid an estimated SSDB offset being placed on your claim." The letter does not indicate that failure to comply could result in a closing of Tamara's file or the permanent termination of her disability benefits. Prudential's closing of Tamara's file and its permanent termination of her benefits because of her failure to provide this documentation, would be and was in violation of the provisions of the Prudential Policy 92630 or 92631.

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 13 a copy

of a letter dated June 27, 2005 from Prudential to University of Illinois.  That letter speaks for

itself.  To the extent the remaining allegations of Paragraph 55 of Plaintiffs' Complaint are

inconsistent with the contents of that letter, those allegations stand denied.

56.    On June 27, 2005, Rebecca Gadbois, Prudential's employee or agent, called Tamara and apologized for the error that resulted in overpayment and asked how Tamara would be repaying the purported overpayment. Ms. Gadbois also stated that Prudential had not yet received documentation of SSDI denial even though it knew she was not eligible for these benefits. Tamara told Rebecca Gadbois that her disability impacted her thought processes and memory, and so she would talk to her husband about the proposed repayment and investigate the absence of documentation of SSDI denial. Ms. Gadbois agreed to call Tamara again on July 5, 2005.

**ANSWER**:    Prudential admits that on June 27, 2005, a telephone conversation took

place between Rebecca Gadbois and Plaintiff Tamara McCormick during which they discussed,

among other things, matters related to an overpayment.  Prudential further admits that Ms.

Gadbois stated she would call Plaintiff Tamara McCormick back on July 5, 2005.   The remaining allegations of Paragraph 56 of Plaintiffs' Complaint stand denied.

57.     On July 7, 2005, Ms. Gadbois telephoned Tamara's home and left a message regarding the purported overpayment.  No mention was made of any other matter.

**ANSWER**:     Prudential admits that on July 7, 2005, Rebecca Gadbois called Plaintiff Tamara McCormick and left a message related to an overpayment.  The remaining allegations of Paragraph 57 of Plaintiffs' Complaint stand denied.

58.     On July 19, 2005, Ms. Gadbois telephoned Tamara's home regarding the purported overpayment. Ms. Gadbois did not mention any other matter.

**ANSWER**:     Prudential admits that on July 19. 2005, Rebecca Gadbois called Plaintiff Tamara McCormick and left a message related to an overpayment.  The remaining allegations of Paragraph 58 of Plaintiffs' Complaint stand denied.

59.     Even though Prudential knew she was ineligible for Social Security Disability Benefits, on July 25, 2005, Prudential sent a letter demanding that Tamara return the purportedly erroneous $7,306.32 "overpayment" and demanding that Tamara submit proof that she had applied for Social Security Disability Benefits. Prudential concluded the letter by threatening to close Tamara's file and submitting the purportedly erroneous overpayment amount to collections. Again, for Prudential to close Tamara's file because she had not returned a statement concerning reimbursement or denial letter from Social Security would be and is a violation of the Prudential Policy 92630 or 92631. (See Exhibit 14, 0925-0926).

**ANSWER**:     Certain of the allegations of Paragraph 59 of Plaintiffs' Complaint are conclusions of law to which no response is required from Prudential. Prudential admits that Plaintiff's Complaint attaches as Exhibit 14 a copy of a letter from Prudential to Plaintiff Tamara McCormick dated July 25, 2005. That letter speaks for itself. To the extent the remaining allegations of Paragraph 59 of Plaintiffs' Complaint are inconsistent with the contents of that letter, those allegations stand denied.

60.     Prudential in fact deducted portions of the purported "overpayment" from benefits paid in July and August, 2005.

**ANSWER**:     Prudential denies the allegations in Paragraph 60 in the form and manner stated, except admits that it sent a letter dated May 28, 2009 to Plaintiffs' attorney. The content of that letter speaks for itself.

61.     On September 2, 2005, Prudential sent Tamara a letter notifying her that Prudential was closing her file, but stating that if she submitted the required documentation, Prudential would "be able to re-visit your claim and consider additional LTD payments." The letter provided that Tamara had 180 days to appeal this decision. (See Exhibit 15, 0927-0928).

**ANSWER**:     Prudential admits that Plaintiffs' Complaint attaches as Exhibit 15 a copy of a letter dated September 2, 2005 from Prudential to Plaintiff Tamara McCormick.  That letter speaks for itself.   To the extent the remaining allegations of Paragraph 61 of Plaintiffs' Complaint are inconsistent with the contents of that letter, those allegations stand denied.

62.     On September 2, 2005, Prudential's disability consultant Rebecca Gadbois decided that Prudential would close its file because she had not heard from Tamara in response to her July 25, 2005 letter (Exhibit 14). Ms. Gadbois never communicated to Tamara Prudential's decision to close her file. This closing of Tamara's file violated the provisions of Tamara's Prudential Policy and Prudential internal policies and procedures.

**ANSWER**:     Prudential denies the allegations contained in Paragraph 62 of Plaintiffs' Complaint except admits that because Plaintiff Tamara McCormick failed to comply with the terms and conditions of the Policy and provide requested information, on September 2, 2005, her long-term disability claim file was closed.  Prudential further admits that Rebecca Gadbois did not specifically communicate to Plaintiff Tamara McCormick that her long-term disability file had been closed.  To the extent that Paragraph 62 alleges that this violated the provisions of the Policy and Prudential's internal policies and procedures, those allegations stand denied.

63.     On October 11, 2005, Tamara called Rebecca Gadbois, a Prudential employee, to notify her that she would be submitting the materials previously requested by Prudential. Rebecca, Prudential's claim disability consultant, told Tamara at that time, that there was no time

limit as to when she had to supply additional information in support of her claim. (See Exhibit 12, 1112-Tel. Log 10/11/2005)

**ANSWER**:   Prudential admits that Plaintiffs' Complaint attaches as Exhibit 12 a copy of a Prudential call log.  That document speaks for itself.  To the extent the remaining allegations of Paragraph 63 of Plaintiffs' Complaint are inconsistent with the contents of the call log, those allegations stand denied.

64.   On October 11, 2005, Tamara sent to Prudential via facsimile, a copy of her denial for Social Security Disability Benefits as well as a cover letter asking that Prudential deduct the purported "overpayment" from future payments. (See Exhibit 16, 0929-0930).

**ANSWER**:   Prudential admits that Plaintiffs' Complaint attaches as Exhibit 16 a copy of certain documents purportedly sent to Prudential, including a copy of a letter dated October 11, 2005.   Those documents speak for themselves. To the extent the remaining allegations of Paragraph 64 of Plaintiffs' Complaint are inconsistent with the contents of the documents, those allegations stand denied.

65.   Prudential received, but did not respond to, the October 11, 2005 facsimile. (Exhibit 16)

**ANSWER**:   Prudential admits that it received a letter dated October 11, 2005, from Plaintiff Tamara McCormick which did not request a response from Prudential. All other allegations of Paragraph 65 of Plaintiffs' Complaint stand denied.

66.   Believing that she had completed her obligations to provide Prudential with the information and documents requested Tamara waited for Prudential to begin making payments again.

**ANSWER**:   Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 66 of Plaintiffs' Complaint, and therefore these allegations stand denied.

67.    When Tamara did not receive payments in the final months of 2005 and early months of 2006, she believed that this was because Prudential was continuing to deduct the purported "overpayment" of her disability benefits.

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of

the allegations set forth in Paragraph 67 of Plaintiffs' Complaint, and therefore these allegations

stand denied.

68.    On July 7, 2006, when Tamara's husband, Dirk, concluded that the purported "overpayment" should have been reimbursed by that point, he telephoned Prudential to find out why no payments were being made. Rebecca Gadbois at Prudential told Dirk that the file had been closed (but did not tell him that this was in violation of Tamara's disability Policy and Prudential policies).

**ANSWER**:    Prudential denies the allegations of Paragraph 68 of Plaintiffs' Complaint

except states that it lacks sufficient information to determine the truth or the falsity of the

allegations set forth in Paragraph 68 of Plaintiffs' Complaint as to what Plaintiff Dirk

McCormick "concluded," and admits that on July 7, 2006, a telephone conversation took place

between Rebecca Gadbois and Plaintiff Dirk McCormick during which Ms. Gadbois told

Plaintiff Dirk McCormick, among other things, that Plaintiff Tamara McCormick's file had been

closed.

69.    Prudential then offered Tamara an opportunity to appeal the closing of her file. Prudential had never responded to her October 11, 2005 facsimile (Exhibit 16) nor did it ever notify her that the documents she had previously submitted were inadequate for purposes of appealing Prudential's decision.

**ANSWER**:    Prudential admits that Plaintiff Tamara McCormick filed an appeal with

Prudential.   Prudential further admits that it received a letter dated October 11, 2005, from

Plaintiff Tamara McCormick which did not request a response from Prudential. The remaining

allegations of Paragraph 69 of Plaintiffs' Complaint stand denied in the form and manner stated.

70.    On July 10, 2006, Tamara again sent the Social Security Disability Benefits denial to Prudential via facsimile (See Exhibit 17, 0931-0933) and asked them to work with her husband instead.

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 17 a copy of a facsimile dated July 10, 2006.  That facsimile speaks for itself.  To the extent the remaining allegations of Paragraph 70 of Plaintiffs' Complaint are inconsistent with the contents of that facsimile, those allegations stand denied.

71.    On July 12, 2006, Prudential sent a letter to Dirk demanding that more forms be completed and returned before Prudential would consider "re-opening" Tamara's file. (See Exhibit 18, 0934).

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 18 a copy of a letter dated July 12, 2006 from Prudential to Plaintiff Dirk McCormick.  That letter speaks for itself.  To the extent the remaining allegations of Paragraph 71 of Plaintiffs' Complaint are inconsistent with the contents of that letter, those allegations stand denied.

72.    The July 12, 2006 Prudential letter (See Exhibit 18) also demanded that all pertinent records from all of Tamara's physicians from July 1, 2005 to the date of the letter be submitted to Prudential. At that time Prudential had no reasonable basis to believe that the nature and extent of Tamara's disability had diminished or changed during the time frame of 7/1/05 to 7/12/06.

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 18 a copy of a letter dated July 12, 2006 from Prudential to Plaintiff Dirk McCormick.  That letter speaks for itself.  The remaining allegations of Paragraph 72 of Plaintiffs' Complaint stand denied.

73.    Tamara spent the next six months collecting more medical records including test results and physician statements, as well as again completing Prudential forms and a reimbursement agreement.

**ANSWER**:    Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 73 of Plaintiffs' Complaint, and therefore these allegations stand denied.

74.    On March 31, 2007, Tamara submitted all of the aforementioned records to Prudential, which included (1) Activities of Daily Living dated 03/09/07 (0936-0944), (2) APS Schoenberg 3/23/07, Document No. 0945-0947; (3) Reimbursement Agreement, 0948; (4) HIPAA Authorization 0950 (See Exhibit 19, 0935-0951).

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 19 copies

of documents purportedly sent to Prudential by letter dated March 31, 2007.  These documents

speak for themselves. To the extent the remaining allegations of Paragraph 74 of Plaintiffs'

Complaint are inconsistent with the contents of these documents, those allegations stand denied.

75.    Over 60 days passed and Tamara did not receive a response to her March 31, 2007 submission.

**ANSWER**:    Prudential admits that it received a letter dated March 31, 2007 from

Plaintiff Tamara McCormick which did not request a response from Prudential.  The remaining

allegations of Paragraph 75 stand denied in the form and manner stated.

76.    On June 14, 2007, Tamara re-submitted her March 31, 2007 under a new cover letter with again asking that Prudential re-open her file. (See Exhibit 20, 0971-1006, same documents Ex. 19 plus Dr. Ludwig 8/28/06 letter, 0967, Springfield Clinic record 3/23/07 & tests 0971-1006).

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 20 copies

of documents purportedly sent to Prudential by letter dated June 14, 2007.  These documents

speak for themselves.  To the extent the remaining allegations of Paragraph 76 of Plaintiffs'

Complaint are inconsistent with the content of these documents, those allegations stand denied.

77.    Tamara never received a response to her June 14, 2007 submission (Exhibit 20).

**ANSWER**:    Prudential denies the allegations contained in Paragraph 77 of Plaintiffs'

Complaint in the form and manner stated.

78.    On September 25, 2007, Tamara re-submitted her March 31, 2007 submission and her June 14, 2007 submission under a new cover letter with additional documentation again asking that Prudential re-open her file. (See Group Exhibit 21, 1007-1062).

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 21 copies of documents purportedly sent to Prudential by letter dated September 25, 2007. These documents speak for themselves.  To the extent the remaining allegations of Paragraph 78 of Plaintiffs' Complaint are inconsistent with the content of these documents, those allegations stand denied.

79.    On November 15, 2007, Dirk telephoned Prudential and talked to Mark Tolbert and asked what was necessary for Prudential to re-open Tamara's file.

**ANSWER**:    Prudential admits that on November 15, 2007, a telephone conversation took place between Mark Tolbert and Plaintiff Dirk McCormick during which they discussed Plaintiff Tamara McCormick's file status. The remaining allegations of Paragraph 79 of Plaintiffs' Complaint stand denied in the form and manner stated.

80.    On January 15, 2008, 259 days after submitting the requested additional information to Prudential, Dirk again contacted Prudential by telephone and left a voicemail message for Rebecca Gadbois. Rebecca Gadbois returned his call and informed him that Prudential's clinical staff would be evaluating Tamara's file.

**ANSWER**:    Prudential admits that on January 15, 2008, Rebecca Gadbois called Plaintiff Dirk McCormick in response to a message he left Ms. Gadbois about Plaintiff Tamara McCormick.  Prudential lacks sufficient information to determine the truth or falsity of the allegations set forth in Paragraph 80 of Plaintiffs' Complaint with respect to whether January 15, 2008, was 259 days after the submission of certain "additional information to Prudential." These allegations are vague and ambiguous and therefore stand denied.  All remaining allegations of Paragraph 80 of Plaintiffs' Complaint stand denied in the form and manner stated.

81.    As of January 15, 2008, Prudential's clinical staff had not

a.    evaluated Tamara's file even though it had the documents for over six months.

b.    requested, required or offered that Tamara by examined by a physician of Prudential's choosing.

c.    submitted any of Tamara's records to anyone for internal or independent review evaluation.

**ANSWER**:    Prudential denies the allegations of Paragraph 81 of Plaintiffs' Complaint and all subparts thereof in the form and manner stated. Prudential evaluated Plaintiff Tamara McCormick's claim pursuant to the terms and conditions set forth in the Policy.

82.    On or about January 27, 2008, Rebecca Gadbois referred Tamara's claim file to a Clinical Review Team at Prudential.

**ANSWER**:    Prudential admits that on or about January 27, 2008, Rebecca Gadbois referred Plaintiff Tamara McCormick's file for a clinical review.  The remaining allegations of Paragraph 82 of Plaintiffs' Complaint stand denied.

83.    On or about February 2, 2008, Mary Ann DeSantis, RN of Prudential's Clinical Review Team, reviewed Tamara's file and conferred with a Dr. Kowalski who recommended that Claims Management should consider outside referral to cardiologist, rheumatologist and psychiatric review.

**ANSWER**:    Prudential admits that on or about February 8, 2008, Mary Ann DeSantis, RN, reviewed Plaintiff Tamara McCormick's file. Prudential further admits that thereafter, Nurse DeSantis consulted with Dr. Kowalski, and that Dr. Kowalski suggested, among other things, considering referring Plaintiff Tamara McCormick's claim file for certain external file reviews. The remaining allegations of Paragraph 83 of Plaintiffs' Complaint stand denied.

84.    In February 2008, Prudential ordered a clinical review of Tamara's file.

**ANSWER**:    Prudential admits the allegations contained in Paragraph 84 of Plaintiffs' Complaint.

85.    On or about February 26, 2008, Rebecca Gadbois recommended that Tamara's file be reviewed by three external physicians with areas of expertise in Cardiology, Rheumatology and Psychiatry.

**ANSWER**:    Prudential admits that by February 26, 2008, a recommendation had been made to send Plaintiff Tamara McCormick's claim for three outside medical specialty reviews in cardiology, rheumatology and psychology.  The remaining allegations contained in Paragraph 85 of Plaintiffs' Complaint stand denied.

86.    On February 29, 2008, Prudential contacted MLS National Medical Services, Inc., to conduct an allegedly independent review of Tamara's file.

**ANSWER**:    Prudential admits that on February 29, 2008, it sent a letter to MLS.  That letter speaks for itself.  To the extent the remaining allegations of Paragraph 86 of Plaintiffs' Complaint are inconsistent with the content of that letter, those allegations stand denied.

87.    In its February 29, 2008, letter to MLS, Prudential stated that Tamara was out of work "due to an assortment of complaints which include Fibromyalgia, Reflux Disease and depression." No mention was made of Tamara's congenital heart defect or mental health problem in the letter.

**ANSWER**:    Prudential admits that on February 29, 2008, it sent a letter to MLS.  That letter speaks for itself.  To the extent the remaining allegations of Paragraph 87 of Plaintiffs' Complaint are inconsistent with the content of that letter, those allegations stand denied.

88.    In its February 29, 2008 letter to MLS, Prudential only asked for an independent review of Tamara's file by a physician specializing in Rheumatology.

**ANSWER**:    Prudential admits that on February 29, 2008, it sent a letter to MLS.  That letter speaks for itself.  To the extent the remaining allegations of Paragraph 88 of Plaintiffs' Complaint are inconsistent with the content of that letter, those allegations stand denied.

89.     On March 6, 2008, Prudential sent a letter to an unidentified third party review service requesting an additional independent review of Tamara's file, however there is no indication of the issue to be reviewed and by which specialty.

**ANSWER**:     Prudential admits that it sent a letter dated March 6, 2008 to MLS.  That letter speaks for itself.  To the extent the remaining allegations of Paragraph 89 of Plaintiffs' Complaint are inconsistent with the content of that letter, those allegations stand denied.

90.     In its March 6, 2008 letter, Prudential again did not identify Tamara's congenital heart defect, but did ask for a review of her cardiac functionality. The letter did not specify what kind of specialty or expertise was requested to address these questions.

**ANSWER**:     Prudential admits that it sent a letter dated March 6, 2008 to MLS.   That letter speaks for itself.  To the extent the remaining allegations of Paragraph 90 of Plaintiffs' Complaint are inconsistent with the content of that letter, those allegations stand denied.

91.     Contrary to the recommendation of the medical review team, on March 19, 2008, Rebecca Gadbois requested a psychiatric review of the file from an in-house psychologist employed by Prudential.

**ANSWER**:     Prudential admits that on March 19, 2008, Rebecca Gadbois requested a psychiatric review of Plaintiff Tamara McCormick's file from a clinical neuropsychologist consultant.  The remaining allegations of Paragraph 91 of Plaintiffs' Complaint are denied in the form and manner stated.

92.     On or about March 22, 2008, Prudential received a copy of a "multidisciplinary panel review" of the MIS which was MLS's summary of the findings of Dr. Howard (Rheumatologist) and Dr. Gaeta, (Cardiologist). (See Exhibit 22, 1492-1506).

**ANSWER**:     Prudential admits that Plaintiffs' Complaint attaches as Exhibit 22 copies of two letters dated March 21, 2008, from Joseph R. Gaeta, M.D. and Paul Howard, M.D.  Those letters speak for themselves.  To the extent the remaining allegations of Paragraph 92 of Plaintiffs' Complaint are inconsistent with the content of the letters, those allegations stand denied.

93.    MLS reported (Exhibit 22) that:

a.    Dr. Howard agreed with findings in Tamara's medical records that Tamara had FMS;

b.    Dr. Howard concluded that Tamara had FMS, but was without functional impairment due to her FMS, and there were no appropriate restrictions and/or limitations;

c.    Dr. Howard concluded that Tamara's limitations are "self- reported" and "not based on any objective findings" even though MLS and Prudential knew that virtually all physical limitations caused by FMS are both self-reported and not objectively measurable. This requirement for objective verification or finding in order to support a claim for disability is in violation of the Policy and internal guidelines and policies of Prudential and several final decisions of other United States District Courts against Prudential wherein the court held that Prudential's requirement of objective findings was in violation of the same LTD policy it has issued to other insureds;

d.    Dr. Gaeta concluded that Tamara's diminished heart function was "very mild;"

e.    Dr. Gaeta concluded that Tamara's cardiac diagnosis was "that of recurring atrial fibrillation in the setting of an essentially structural normal heart."

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 22 copies of two letters dated March 21, 2008, from Joseph R. Gaeta, M.D. and Paul Howard, M.D. Those letters speak for themselves. To the extent the remaining allegations of Paragraph 93 of Plaintiffs' Complaint and all subparts thereof are inconsistent with the content of the letters, those allegations stand denied.

94.    Prudential ignored the recommendation of its own medical review team to get an outside psychiatric review of Tamara's file, and had this review performed by a Prudential employee, Melvin Attfield, Ph.D.. Prudential's internal psychiatric review of Tamara's file concluded that "documentation in the file fail to indicate depressive symptomology supporting depression as the primary impairment... ."

**ANSWER**:    Prudential denies the allegations of Paragraph 94 of Plaintiffs' Complaint except admits that Melvyn Attfield, Ph.D. reviewed Plaintiff Tamara McCormick's file. The records related to that review speak for themselves.

95.    On June 11, 2008, Prudential sent Tamara a letter denying her appeal, and further intentionally, willfully continued to maintain the pretext that the file for her was closed even after Prudential's agents had failed to tell Tamara that her file might be closed and had also told

her not to worry in that she could submit additional documentation for her appeal when she obtained it. (See Exhibit 23, 1067-1068).

**ANSWER**:    Prudential denies the allegations of Paragraph 95 of Plaintiffs' Complaint except admits that Plaintiffs' Complaint attaches as Exhibit 23 a copy of a letter dated June 11, 2008, from Prudential to Plaintiff Tamara McCormick.  That letter speaks for itself.

96.    The June 11, 2008, Prudential letter (Exhibit 23) states that:

a.    "we had difficulty obtaining current medical records and did not receive requested forms back from you."

b.    "Clinical Resources" recommended a review of Tamara's file by "outside consultants in the field of Rheumatology, Cardiology and Psychology," and that Prudential "moved forward with these recommendations and did receive reports from these specialties." This statement was not true in that Tamara's file had never been reviewed by an independent psychologist or psychiatrist.

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 23 a copy of a letter dated June 11, 2008, from Prudential to Plaintiff Tamara McCormick.  That letter speaks for itself.  To the extent the remaining allegations of Paragraph 96 of Plaintiffs' Complaint and all subparts thereof are inconsistent with the content of that letter, those allegations stand denied.

97.    The June 11, 2008, Prudential letter (Exhibit 23) stated that Tamara

a.    could appeal Prudential decision within 180 days of receipt of the letter, and that any such appeal should be directed to Prudential's Appeals Review Unit;

b.    is "entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim."

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 23 a copy of a letter dated June 11, 2008, from Prudential to Plaintiff Tamara McCormick. That letter speaks for itself.  To the extent the remaining allegations of Paragraph 97 of Plaintiffs' Complaint and all subparts thereof are inconsistent with the content of that letter, those allegations stand denied.

98.    On or about June 11, 2008, Rebecca Gadbois, a Prudential employee, falsely informed Dirk that Prudential was denying the claim after "3 outside specialty reviews."

**ANSWER**:    Prudential admits that on June 11, 2008, a telephone conversation took place between Rebecca Gadbois and Plaintiff Dirk McCormick during which they discussed, among other things, the status of Plaintiff Tamara McCormick's long-term disability claim.  The remaining allegations of Paragraph 98 of Plaintiffs' Complaint stand denied in the form and manner stated.

99.    On June 12, 2008, Rebecca Gadbois, a Prudential employee, again falsely informed Dirk that Prudential had denied Tamara's claim as a result of "3 outside reviews and one interanl [sic] review and none of these were supportive of the inability to work and perform her job functions."

**ANSWER**:    Prudential admits that on June 12, 2008, a telephone conversation took place between Rebecca Gadbois and Plaintiff Dirk McCormick during which they discussed, among other things, the status of Plaintiff Tamara McCormick's long-term disability file.   The remaining allegations of Paragraph 99 of Plaintiffs' Complaint stand denied in the form and manner stated.

100.    The June 11, 2008, Prudential letter (Exhibit 23) was not actually mailed by Prudential until June 16, 2008, and was not received by Tamara until June 20, 2008.

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 23 a copy of a letter dated June 11, 2008, from Prudential to Plaintiff Tamara McCormick.  That letter speaks for itself.  Prudential lacks sufficient information to determine the truth or falsity of the remaining allegations set forth in Paragraph 100 of Plaintiffs' Complaint, and therefore those allegations stand denied.

101.   On July 15, 2008, Tamara sent a letter to Prudential requesting 15 categories of documents in order to decide whether to appeal Prudential's denial of coverage. (See Exhibit 24, 1070-1073).

**ANSWER**:   Prudential admits that Plaintiffs' Complaint attaches as Exhibit 24 certain documents purportedly sent to Prudential including, but not limited to, a copy of a letter dated July 15, 2008, from Plaintiff Tamara McCormick to Prudential. The documents speak for themselves.  To the extent the remaining allegations of Paragraph 101 of Plaintiffs' Complaint are inconsistent with the content of the documents, those allegations stand denied.

102.   On December 12, 2008, Tamara sent a letter by Federal Express to Prudential designated as first appeal of Prudential's denial of coverage. (See Exhibit 25, 1074-1077 & attachments thereto). This first appeal was received by Prudential on December 15, 2008.

**ANSWER**:   Prudential admits that Plaintiffs' Complaint attaches as Exhibit 25 certain documents purportedly sent to Prudential including, but not limited to, a copy of a letter dated December 12, 2008, from Plaintiff Tamara McCormick to Prudential and a copy of a Fed Ex tracking document showing, among other things, a "delivery date" of December 15, 2008.  The documents speak for themselves.  To the extent the remaining allegations of Paragraph 102 of Plaintiffs' Complaint are inconsistent with the content of the documents, those allegations stand denied.

103.   Tamara's December 12, 2008 letter (Exhibit 25), also included a second request for 10 categories of documents that had been previously requested in Tamara's July 15, 2008 (Exhibit 24) letter, but never provided.

**ANSWER**:   Prudential admits that Plaintiffs' Complaint attaches as Exhibit 25 certain documents purportedly sent to Prudential including, but not limited to, a copy of a letter dated December 12, 2008, from Plaintiff Tamara McCormick to Prudential.  Prudential further admits that Plaintiffs' Complaint attaches as Exhibit 24 certain documents purportedly sent to Prudential including, but not limited to, a copy of a letter dated July 15, 2008, from Plaintiff Tamara

McCormick to Prudential.  Those documents speak for themselves.  To the extent the remaining allegations of Paragraph 103 are inconsistent with the content of the documents, those allegations stand denied.

104.    On December 18, 2008, Tamara sent a letter to Prudential requesting that Prudential provide her with a new contact person and requesting 9 categories of documents that she originally requested in her July 15, 2008, letter (Exhibit 26, 1085 - 1091) and that Prudential had still not provided to her.

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 26 certain documents purportedly sent to Prudential including, but not limited to, a copy of letter dated December 18, 2008, from Plaintiff Tamara McCormick to Prudential.  Those documents speak for themselves.  To the extent the remaining allegations of Paragraph 104 of Plaintiffs' Complaint are inconsistent with the content of the documents, those allegations stand denied.

105.    In the aforementioned letters, Tamara identified requested documents that Prudential had failed to provide, and also reserved her right to supplement her appeal with subsequently received documents.

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches certain documents, including letters, as exhibits to their Complaint.  Those documents speak for themselves.  To the extent the remaining allegations of Paragraph 105 of Plaintiffs' Complaint are inconsistent with the content of the documents, those allegations stand denied.

106.    On December 24, 2008, Prudential sent Tamara a letter informing her that they had not initiated her appeal because Tamara had indicated that she did not have all the necessary documentation. (See Exhibit 27, 1099-1100)

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 27 certain documents including, but not limited to, a copy of letter from Prudential to Plaintiff Tamara McCormick dated December 24, 2008.  The documents speak for themselves.  To the extent the remaining allegations of Paragraph 106 are inconsistent with the content of the documents, those allegations stand denied.

107.    Prudential's December 24, 2008, letter (Exhibit 27) was and is disingenuous as the only information Tamara was missing was that which Prudential had refused to provide.

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 27 certain documents including, but not limited to, a copy of a letter from Prudential to Plaintiff Tamara McCormick dated December 24, 2008.  The documents speak for themselves.  The remaining allegations of Paragraph 107 of Plaintiffs' Complaint stand denied.

108.    Prudential's December 24, 2008 letter (Exhibit 27) again required that Tamara complete another Activity of Daily Living Form and HIPAA medical authorization and return them to Prudential "as soon as possible."

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 27 certain documents including, but not limited to, a copy of a letter from Prudential to Plaintiff Tamara McCormick dated December 24, 2008.  The documents speak for themselves.  To the extent the remaining allegations of Paragraph 108 are inconsistent with the content of the documents, those allegations stand denied.

109.    On February 5, 2009, Tamara's attorney sent a letter to Prudential identifying five categories of documents initially requested in July 2008 and again requested in December 2008 that had still not been provided. (See Exhibit 28, 1596-1616).

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 28 certain documents purportedly sent to Prudential including, but not limited to, a copy of a letter dated February 5, 2009, from R. Gerald Barris to Prudential.  The documents speak for themselves.  To the extent the remaining allegations of Paragraph 109 are inconsistent with the content of the documents, those allegations stand denied.

110.    On March 3, 2009, Tamara's attorney called Nancy Pichette, a Prudential employee, to confirm that Prudential received his February 5, 2009, letter. Ms. Pichette acknowledged receipt of the letter but stated that she not had an opportunity to read it.

**ANSWER**:    Prudential admits that on March 3, 2009, a telephone conversation took place between Nancy Pichette and R. Gerald Barris during which they discussed Plaintiff Tamara

McCormick's file.  The remaining allegations of Paragraph 110 of Plaintiffs' Complaint stand

denied in the form and manner stated.

111.   On March 9, 2009, Prudential sent Tamara's attorney a letter stating that
Prudential was "performing a thorough evaluation based on the information currently in her file."

**ANSWER**:    Prudential admits that it sent a letter dated March 9, 2009, to R. Gerald

Barris.  That letter speaks for itself.  To the extent the remaining allegations of Paragraph 111 of

Plaintiffs' Complaint are inconsistent with the content of that letter, those allegations stand

denied.

112.   On or about March 9, 2009, Nancy Pichette, Prudential's Senior Appeals Analyst,
determined that Tamara's appeal would now be decided by a completely new external review
panel. Ms. Pichette decided the second review of Tamara's medical records would be by Dr.
Gaeta and Dr. Howard, who had originally denied her appeal, and an external psychiatric
consultant.

**ANSWER**:    Prudential admits that by March 9, 2009, a decision had been made to

refer Plaintiff Tamara McCormick's file out for a second review to Dr. Gaeta and Dr. Howard,

and for an external psychiatric review, but denies that Dr. Gaeta and Dr. Howard originally

denied Plaintiff Tamara McCormick's appeal.  Prudential further admits that the Claim Manager

at that time was Nancy Pichette.  The remaining allegations of Paragraph 112 of Plaintiffs'

Complaint stand denied.

113.   On March 20, 2009, Tamara's attorney sent a letter to Prudential (See Exhibit 29,
1549-1550) requesting:

    a.     five categories of information initially requested in July 2008 and again in
            December 2008, but still not provided by Prudential;
    b.     that Prudential identify the nature of the appeal process.

**ANSWER**:    Prudential admits that Plaintiffs' Complaint attaches as Exhibit 29 a copy

of letter dated March 20, 2009, from R. Gerald Barris to Prudential.  That letter speaks for itself.

To the extent the remaining allegations of Paragraph 113 of Plaintiffs' Complaint and all

subparts thereof are inconsistent with the content of that letter, those allegations stand denied.

114.    On March 20, 2009, Prudential requested that MLS conduct an independent psychiatric evaluation of Tamara's file.

**ANSWER**:    Prudential admits that it sent a letter dated March 20, 2009 to MLS.  That letter speaks for itself.  To the extent the remaining allegations of Paragraph 114 of Plaintiffs' Complaint are inconsistent with the content of that letter, those allegations stand denied.

115.    On March 26, 2009, Prudential sent a letter to Tamara's attorney requesting an additional 45 days to make a decision regarding Tamara's appeal. The letter provided no explanation, and stated that "this extension is required..."

**ANSWER**:    Prudential admits that it sent a letter dated March 26, 2009 to R. Gerald Barris.  That letter speaks for itself.  To the extent the remaining allegations of Paragraph 115 of Plaintiffs' Complaint are inconsistent with the content of that letter, those allegations stand denied.

116.    On or about April 3, 2009, Nancy Pichette, a Prudential employee, intentionally misrepresented to Tamara's attorney that there was no appeal procedure manual, and that the appeal procedure is determined by the policy guidelines.

**ANSWER**:    Prudential admits that on April 3, 2009, a telephone conversation took place between Nancy Pichette and R. Gerald Barris.  The remaining allegations of Paragraph 116 of Plaintiffs' Complaint stand denied in the form and manner stated.

117.    Neither Prudential Policy 92630 nor 92631 identifies any claims or appeal guidelines.

**ANSWER**:    The Policy speaks for itself.  To the extent the allegations in Paragraph 117 of Plaintiffs' Complaint are inconsistent with the content of the Policy, those allegations stand denied.

118.    On April 7, 2009, Tamara's attorney sent a letter to Prudential (Exhibit 30, 2695, 2696):

  a.  asking for an explanation as to why Prudential required an extension of the appeal process.
  b.  again requested information first requested by Tamara in July 2008 and still not provided by Prudential.

c.     requested clarification on the appeal process because Prudential had previously
sent Tamara's attorney a copy of Prudential's appeal process for policies covered
by ERISA. (Tamara's benefits under the Prudential Policy are exempt from
coverage by ERISA).

**ANSWER**:     Prudential admits that Plaintiffs' Complaint attaches as Exhibit 20 a copy

of letter dated April 7, 2009, from R. Gerald Barris to Prudential. That letter speaks for itself.  To

the extent the remaining allegations of Paragraph 118 of Plaintiffs' Complaint and all subparts

thereof are inconsistent with the letter, those allegations stand denied.

119.     On April 7, 2009, Prudential sent a letter to Tamara's attorney stating that the
appeal process is governed solely by the provisions of the policy and that Prudential would not
provide any further information with regard to Tamara's July 2008 request contrary to its prior
promise made in its July 11, 2008, letter (Exhibit 23) that Tamara is "entitled, upon request and
free of charge, reasonable access to, and copies of all documents, records and other information
relevant to your claim."

**ANSWER**:     Prudential admits that on April 7, 2008, it sent a letter to R. Gerald Barris.

Prudential further admits that Plaintiffs' Complaint attaches as Exhibit 23 a copy of a letter dated

June 11, 2008, from Prudential to Plaintiff Tamara McCormick. Those letters speak for

themselves.  To the extent the remaining allegations of Paragraph 119 of Plaintiffs' Complaint

are inconsistent with the letters, those allegations stand denied.

120.     On April 7, 2009, MIS sent to Prudential its summary of the findings of Dr.
Howard and Dr. Gaeta and concluded that their original reports were correct and that Tamara's
disabling symptoms were self-reported and subjective, and there was no objective finding to
support functional impairment related to Fibromyalgia. (See Exhibit 31, 2682-2693).

**ANSWER**:     Prudential admits that Plaintiffs' Complaint attaches as Exhibit 31 copies

of two letters from MLS dated April 7, 2009.  Those letters speak for themselves.  To the extent

the remaining allegations of Paragraph 120 of Plaintiffs' Complaint are inconsistent with the

content of the letters, those allegations stand denied.

121.     On April 8, 2009, MLS sent to Prudential MLS' summary of the review of Dr.
Antoinette Acenas, a consultant psychiatrist, concerning Tamara's file. MLS represented to
Prudential that Dr. Acenas concluded that "due to her (Tamara's) low frustration tolerance as a

result of her depression, the claimant is not able to deal with stress in a competitive work environment such as meeting deadlines at work as well as making work related decisions or working long hours greater than six hours per day which could also be due in part to her low energy from her physical conditions..." (See Exhibit 32, 2708-2714).

**ANSWER**:    Prudential admits that Plaintiff's Complaint attaches as Exhibit 32 a copy of a letter from MLS dated April 8, 2009.  That letter speaks for itself.  To the extent the remaining allegations of Paragraph 121 of Plaintiffs' Complaint are inconsistent with the content of that letter, those allegations stand denied.

122.    On May 6, 2009, Prudential sent Tamara's attorney a letter (Exhibit 33, 2773-2778) from Prudential, stating:

   a.    that Tamara was entitled to receive 24 months of disability pay due "in whole or in part to mental illness."
   b.    that Prudential denied any and all other aspects of Tamara's claim.
   c.    that Prudential would be deducting from Tamara's benefits the claimed overpayment of $7,306.32 in "catastrophic" benefits that had previously been "waived" when Prudential denied Tamara's claim.
   d.    that Tamara had a right to appeal Prudential's decision at least two more times.

**ANSWER**:    Prudential admits that on May 6, 2009, it sent a copy of a letter dated May 6, 2009, to R. Gerald Barris.  That letter speaks for itself.  Prudential denies that a copy of that letter is attached as Exhibit 33 to Plaintiffs' Complaint.  To the extent the remaining allegations of Paragraph 122 of Plaintiffs' Complaint and all subparts thereof are inconsistent with the content of that letter, those allegations stand denied.

123.    On May 28, 2009, Prudential sent Tamara's attorney a letter notifying him that Tamara's total benefit after reducing for Social Security Retirement Income and the purported $7,306.32 overpayment in "catastrophic" benefits was $4,522.31.

**ANSWER**:    Prudential admits that on May 28, 2009, it sent two letters to R. Gerald Barris.  Those letters speak for themselves.  To the extent the remaining allegations of Paragraph 123 of Plaintiffs' Complaint are inconsistent with the content of the letters, those allegations stand denied.

124. Plaintiff incorporates by reference Exhibits 1 through 33 attached to the Complaint into the paragraphs where they are mentioned herein. Attached to the Complaint is a List of the Exhibits and document numbers (Exhibit A).

**ANSWER**:    Prudential admits that Plaintiff has attached a list of exhibits and document numbers to the Complaint as Exhibit A.  All documents attached as exhibits speak for themselves.  To the extent any allegation contained in any paragraph of Plaintiffs' Complaint or any subpart thereof is inconsistent with the content of the documents, they stand denied.

## COUNT I

### Tamara's Common Law Fraud And Affirmative Misrepresentation

1-124. Tamara realleges the allegations of Paragraphs 1 through 124 of the Common Allegations as Paragraphs 1 through 124 of Count I.

**ANSWER**:    Prudential incorporates by reference its responses to Paragraphs 1-124 of the Plaintiffs' Complaint as if fully set forth herein.  To the extent any further answer to this Paragraph or the introductory Paragraph under Count I of Plaintiffs' Complaint is required it stands denied.

125. Prudential made one or more of the following statements of material facts to Tamara.

   a.    That the benefits offered by its Long Term Disability Policy were the same benefits as those that had been offered by the prior Long Term Disability Policy offered by Fortis Insurance Company.
   b.    That Tamara's claim for disability had been reviewed by three independent outside specialists in Cardiology, Rheumatology and Psychology.

**ANSWER**:    Prudential admits that it told Plaintiff Tamara McCormick that her claim file had been referred to outside medical consultants in the field of Rheumatology, Cardiology and Psychology, and that Prudential received reports from these qualified medical professionals in each of these specialties. Prudential denies the remaining allegations of Paragraph 125 of Plaintiffs' Complaint in the form and manner stated.

126.    The facts set forth in Paragraph 125 were false.

**ANSWER**:    Prudential    denies    the    allegations    of    Paragraph    126    of    Plaintiffs'

Complaint.

127.    Prudential knew or believed that the statements made in Paragraph 125 were untrue at the time it made those statements.

**ANSWER**:    Prudential    denies    the    allegations    of    Paragraph    127    of    Plaintiffs'

Complaint.

128.    The statements of false facts as alleged in Paragraph 125 were made by Prudential and its agents for the purpose of furthering its scheme and plan of inducing Tamara to purchase and continue to pay premiums for a Long Term Supplemental Disability Insurance Policy issued by it.

**ANSWER**:    Prudential    denies    the    allegations    of    Paragraph    128    of    Plaintiffs'

Complaint.

129.    If Tamara had known the statements in Paragraph 125 were not true, she would not have purchased or continued to pay premiums for Prudential's Long Term Disability Policy insuring her. Tamara would have retained Long Term Disability Insurance with Fortis under which there would be no question that Tamara's medical condition would meet the definition of total disability in its Policy.

**ANSWER**:    Prudential    denies    that    it    made    untrue    statements    to    Plaintiff    Tamara

McCormick.    Prudential lacks sufficient information to determine the truth or falsity of the

remaining allegations set forth in Paragraph 129 of Plaintiffs' Complaint, and therefore these

allegations stand denied.

130.    Tamara's reliance on the above material representations proximately caused her to lose at least 36 months of benefits for the first 60 months of payments and in excess of $300,000 future disability payments because she is unable to perform the duties of any gainful occupation for which she is reasonably suited by education, training or experience.

**ANSWER**:    Prudential    denies    the    allegations    of    Paragraph    130    of    Plaintiffs'

Complaint.

131.    The material representations of facts set forth above have proximately caused Tamara personal injury by the extreme emotional stress it has caused her which has aggravated the condition of ill being for which she has been treated.

**ANSWER**:    Prudential denies the allegations of Paragraph 131 of Plaintiffs' Complaint.

WHEREFORE, Prudential requests that this Court enter judgment in favor of Prudential, and against Plaintiffs, and that this Court award to Prudential such other and further relief as this Court deems just and equitable, including but not limited to an award to Prudential of its reasonable attorneys' fees and costs

## COUNT II

### Tamara's Claim for Common Law Fraud
### by Prudential's Failure To Disclose Material Facts

1-124.    Tamara realleges the allegations of Paragraphs 1 through 124 of the Common Allegations as Paragraphs 1 through 124 of Count II.

**ANSWER**:    Prudential incorporates by reference its responses to Paragraphs 1-124 of the Plaintiffs' Complaint as if fully set forth herein. To the extent any further answer to this Paragraph or the introductory Paragraph under Count II of Plaintiffs' Complaint is required it stands denied.

132.    (Incorrectly numbered by Plaintiffs as 125)  Prudential, as part of its scheme to defraud Tamara and other potential insureds, intentionally hid, concealed and kept secret from its insured and potential insureds, the following facts concerning its coverage, services, claim procedures for its group Long Term Disability Plan issued to SURS and for which Tamara purchased as Supplemental Long Term Disability Policy:

    a.      It had a policy and practice of not conducting a reasonable investigation of its insureds' disability based on all available information prior to determining whether to deny a claim.

    b.      It had a policy and scheme to deny claims for disability because of "self reported" symptoms or medical history for conditions such as Fibromyalgia.

    c.      It had a policy of denying claims for Fibromyalgia, a recognized medical condition which can only be diagnosed by a physician based on the patient's subjective complaints, physical evaluation and the elimination of other possible

causes, and for which there are no objective tests to confirm the disease or condition.

d.      It had a policy and practice of not training its employees to properly investigate and review disability claims.

e.      It did not have any procedures concerning how appeals of denial of claims for disability would be investigated or processed.

f.      It had a policy and practice not to diligently search for evidence which supported the insured's claim for disability.

g.      It had a policy and practice of not contacting witnesses and gathering documents and information favorable to an insured's claim.

h.      It had a policy and practice of denying benefits without making a thorough and competent investigation of the claim.

i.      It had a policy and practice of ignoring evidence which supports coverage.

j.      It had a policy and practice of conducting its investigation of a claim for disability in a manner designed to deny coverage while ignoring facts which support coverage.

k.      It had a policy and practice of contracting with biased third party review companies, such as MLS National Medical Evaluation Services to perform external reviews of appeals of Prudential's denial of claims, and these companies would either change or alter the experts' reports or who would retain biased experts who would review the appeal looking for reasons to deny the claim or appeal rather than for the purpose of finding coverage.

l.      It had a policy and practice to interpret its policy provisions in a narrow fashion so as to deny coverage rather than to favor coverage.

m.      It had a policy and practice to interpret coverage under its Long Term Disability Policy so as to not give effect to the mutual intent of both parties.

n.      It had a policy and practice to resolve all ambiguous language in favor of denying coverage and thus in favor of Prudential.

o.      It had a policy and practice of lying to insureds about the type, nature and extent of the review of their claims or appeals.

p.      It had a policy and practice of unreasonably investigating and requiring the claimant or insured to re-submit documents and medical information concerning the nature and extent of insured's disability when Prudential had no evidence or reasonable basis for believing that the insured's medical condition had improved or changed.

**ANSWER**:      Prudential denies the allegations of Paragraph 132 of Plaintiffs' Complaint

and all subparts thereof.

133.     (Incorrectly numbered by Plaintiffs as 126). Prudential knew it was under a duty to disclose the facts set forth in Paragraph 125 above and that any potential insured would reasonably expect that Prudential or its agents would advise him or her of those facts.

**ANSWER**:     Prudential denies the allegations of Paragraph 133 of Plaintiffs' Complaint.

134.     (Incorrectly numbered by Plaintiffs as 127)  If Tamara had known the material facts not disclosed as set forth in Paragraph 125 above, she would not have purchased or continued to pay premiums for Prudential's Long Term Disability Policy insuring her. Tamara would have retained her disability insurance with Fortis under which there would be no question that due to her medical condition she would have been found to be totally disabled or she would have found other insurance companies which would have had a broader definition of the term "disability" or would have fairly and reasonably reviewed her claim of disability.

**ANSWER**:     Prudential denies that it failed to disclose material facts to Plaintiff Tamara McCormick.  Prudential lacks sufficient information to determine the truth or falsity of the remaining allegations set forth in Paragraph 134 of Plaintiffs' Complaint, and therefore these allegations stand denied.

135.     (Incorrectly numbered by Plaintiffs as 128)  Prudential's failure to disclose material facts set forth in Paragraph 125 were made by Prudential and its agents for the purpose of furthering its scheme and plan of inducing Tamara and other UIS employees to purchase Prudential's Long Term Disability Insurance Policies or to keep paying premiums on a policy which had a stricter definition of "disability" than the Fortis policy.

**ANSWER**:     Prudential denies the allegations contained in Paragraph 135 of Plaintiffs' Complaint.

WHEREFORE, Prudential requests that this Court enter judgment in favor of Prudential, and against Plaintiffs, and that this Court award to Prudential such other and further relief as this Court deems just and equitable, including but not limited to an award to Prudential of its reasonable attorneys' fees and costs

## COUNT III

### Tamara's Claim for Punitive Damages Because of Prudential's Common Law Fraud And Affirmative Misrepresentation

Contemporaneously herewith, Prudential files a motion to strike Count III of Plaintiffs' Complaint in its entirety and with prejudice and as such, makes no answer to the allegations contained in Count III of Plaintiffs' Complaint.

WHEREFORE, Prudential requests that this Court enter judgment in favor of Prudential, and against Plaintiffs, and that this Court award to Prudential such other and further relief as this Court deems just and equitable, including but not limited to an award to Prudential of its reasonable attorneys' fees and costs

## COUNT IV

### Tamara's Claim for Punitive Damages Based on the Common Law Fraud by Prudential's Failure To Disclose Material Facts

Contemporaneously herewith, Prudential files a motion to strike Count IV of Plaintiffs' Complaint in its entirety and with prejudice and as such, makes no answer to the allegations contained in Count IV of Plaintiffs' Complaint.

WHEREFORE, Prudential requests that this Court enter judgment in favor of Prudential, and against Plaintiffs, and that this Court award to Prudential such other and further relief as this Court deems just and equitable, including but not limited to an award to Prudential of its reasonable attorneys' fees and costs.

# COUNT V

## Tamara's Claim Under the Illinois Consumer Fraud and Deceptive Practices Act

1-124. Tamara realleges the allegations of Paragraphs 1 through 124 of the Common Allegations as Paragraphs 1 through 124 of Count II.

**ANSWER**:    Prudential incorporates by reference its responses to Paragraphs 1-124 of the Plaintiffs' Complaint as if fully set forth herein.  To the extent any further answer to this Paragraph or the introductory Paragraph under Count V of Plaintiffs' Complaint is required it stands denied.

150.    (Incorrectly numbered by Plaintiffs as 125)  Prudential, as part of its scheme to defraud its insureds and potential insureds, intentionally hid, concealed and kept secret from its insured and potential insureds,. the following facts concerning its coverage, services, claim procedures for of its group Long Term Disability Plan issued to SURS and for which Tamara purchased as Supplemental Long Term Disability Policy:

    a.    It had a policy and practice of not conducting a reasonable investigation of its insureds' disability based on all available information prior to determining whether to deny a claim.

    b.    It had a policy and scheme to deny claims for disability because of "self reported" symptoms or medical history for conditions such as Fibromyalgia.

    c.    It had a policy of denying claims for fibromyalgia, a recognized medical condition which can only be diagnosed by a physician based on the patient's subjective complaints, physical examination, and the elimination of other possible causes, and for which there are no objective tests to confirm the disease or condition.

    d.    It had a policy and practice of not training its employees to properly investigate and review disability claims.

    e.    It did not have any procedures concerning how appeals of denial of claims for disability would be investigated or processed.

    f.    It had a policy and practice not to diligently search for evidence which supported the insured's claim for disability.

    g.    It had a policy and practice of not contacting witnesses and gathering documents and information favorable to an insured's claim.

    h.    It had a policy and practice of denying benefits without making a thorough and competent investigation of the claim.

    i.    It had a policy and practice of ignoring evidence which supports coverage.

    j.    It had a policy and practice of conducting its investigation of a claim for disability in a manner designed to deny coverage while ignoring facts which support coverage.

    k.    It had a policy and practice of contracting with biased third party review companies, such as MLS National Medical Evaluation Services to perform

> external reviews of appeals of Prudential's denial of claims, and these companies
> would either change or alter the experts' reports or who would retain biased
> experts who would review the appeal looking for reasons to deny the claim or
> appeal rather than for the purpose of finding coverage.

l.    It had a policy and practice to interpret its policy provisions in a narrow fashion
      so as to deny coverage rather than to favor coverage.

m.    It had a policy and practice to interpret coverage under its Long Term Disability
      Policy so as to not give effect to the mutual intent of both parties.

n.    It had a policy and practice to resolve all ambiguous language in favor of denying
      coverage and thus in favor of Prudential.

o.    It had a policy and practice of lying to insureds about the type, nature and extent
      of the review of their claims or appeals.

p.    It had a policy and practice of unreasonably investigating and requiring the
      claimant or insured to re-submit documents and medical information concerning
      the nature and extent of insured's disability when Prudential had no evidence or
      reasonable basis for believing that the insured's medical condition had improved
      or changed.

**ANSWER**:    Prudential denies the allegations of Paragraph 150 of Plaintiffs' Complaint

and all subparts thereof.

151.    (Incorrectly numbered by Plaintiffs as 126)  Prudential knew it was under a duty
to disclose the facts set forth in Paragraph 125 above and that any potential insured would
reasonably expect that Prudential or its agents would advise him or her of those facts.

**ANSWER**:    Prudential denies the allegations of Paragraph 151 of Plaintiffs'

Complaint.

152.    (Incorrectly numbered by Plaintiffs as 127)  If Tamara had known the material
facts not disclosed as set forth in Paragraph 125 above, she would not have purchased or
continued to pay premiums for Prudential's Long Term Disability Policy insuring her. Tamara
would have retained her disability insurance with Fortis under which there would be no question
that due to her medical condition she would have been found to be totally disabled or she would
have found other insurance companies which would have had a broader definition of the term
"disability" or would have fairly and reasonably reviewed her claim of disability.

**ANSWER**:    Prudential denies that it failed to disclose material facts to Plaintiff

Tamara McCormick.  Prudential lacks sufficient information to determine the truth or falsity of

the remaining allegations set forth in Paragraph 152 of Plaintiffs' Complaint, and therefore these

allegations stand denied.

153.    (Incorrectly numbered by Plaintiffs as 128)  The failure to disclose material facts set forth in Paragraph 125 were made by Prudential and its agents for the purpose of furthering its scheme and plan of inducing Tamara and other UIS employees to purchase Prudential's Long Term Disability Insurance Policies or to keep paying premiums on a policy which had a stricter definition of "disability" than the Fortis policy.

**ANSWER**:    Prudential    denies    the    allegations    of    Paragraph    153    of    Plaintiffs'

Complaint.

154.    (Incorrectly numbered by Plaintiffs as 129)  The failure to disclose material facts set forth in Paragraph 125 were made by Prudential and its agents for the purpose of furthering its scheme and plan of inducing Tamara and other UIS employees to purchase Prudential's Long Term Disability Insurance Policies or to keep paying premiums on a policy which had a more stringent definition of "disability" than the Fortis policy.

**ANSWER**:    Prudential    denies    the    allegations    of    Paragraph    154    of    Plaintiffs'

Complaint.

155.    (Incorrectly numbered by Plaintiffs as 130)   Tamara's reliance on the above material representations proximately caused her to lose at least 36 months of benefits for the first 60 months of payments in excess of $300,000 future disability payments because she is unable to perform the duties of any gainful occupation for which she is reasonably suited by education, training or experience.

**ANSWER**:    Prudential    denies    the    allegations    of    Paragraph    155    of    Plaintiffs'

Complaint.

156.    (Incorrectly numbered by Plaintiffs as 131) The material representations of facts set forth above have proximately caused Tamara personal injury by the extreme emotional stress it has caused her which has aggravated the condition of ill being for which she has been treated.

**ANSWER**:    Prudential    denies    the    allegations    of    Paragraph    156    of    Plaintiffs'

Complaint.

WHEREFORE, Prudential requests that this Court enter judgment in favor of Prudential,

and against Plaintiffs, and that this Court award to Prudential such other and further relief as this

Court deems just and equitable, including but not limited to an award to Prudential of its

reasonable attorneys' fees and costs.

## COUNT VI

### Tamara's Claim For Punitive Damages Based On Prudential's Violation of the Illinois Consumer Fraud and Deceptive Practices Act

Contemporaneously herewith, Prudential files a motion to strike Count VI of Plaintiffs' Complaint in its entirety and with prejudice and as such, makes no answer to the allegations contained in Count VI of Plaintiffs' Complaint.

WHEREFORE, Prudential requests that this Court enter judgment in favor of Prudential, and against Plaintiffs, and that this Court award to Prudential such other and further relief as this Court deems just and equitable, including but not limited to an award to Prudential of its reasonable attorneys' fees and costs.

## COUNT VII

### Claim for Recognized Common Law Tort of Intentional Infliction of Emotional Distress Against Prudential

1-124. Tamara realleges the allegations of Paragraphs 1 through 124 of the Common Allegations as Paragraphs 1 through 124 of Count VII.

**ANSWER**:    Prudential incorporates by reference its responses to Paragraphs 1-124 of the Plaintiffs' Complaint as if fully set forth herein.  To the extent any further answer to this Paragraph or the introductory Paragraph under Count VII of Plaintiffs' Complaint is required it stands denied.

165.    (Incorrectly numbered by Plaintiffs as 125)  Prudential, its agents and employees, knew that Tamara's poor condition of her heart, her fibromyalgia and depression could cause her severe physical and emotional damage if her claim for long term disability benefits under its disability policy was denied.

**ANSWER**:    Prudential denies the allegations of Paragraph 165 of Plaintiffs' Complaint.

166.    (Incorrectly numbered by Plaintiffs as 126)  Prudential, its agents and employees, knew that by delaying of and not properly investigating and interpreting the provisions of

Tamara's Long Term Disability Policy, it could increase the likelihood that it would damage her health and other organs of her body, and cause her severe, long term or permanent physical and emotional problems.

**ANSWER**:    Prudential   denies   the   allegations   of   Paragraph   166   of   Plaintiffs'

Complaint.

167.    (Incorrectly numbered by Plaintiffs as 127)  Prudential, its agents and employees, knew that Tamara was emotionally distraught because of its refusal to pay any claim for long term disability benefits.

**ANSWER**:    Prudential   denies   the   allegations   of   Paragraph   167   of   Plaintiffs'

Complaint.

168.    (Incorrectly numbered by Plaintiffs as 128)   Because of her history of Fibromyalgia, heart disease and defect, and depression, Prudential, its agents and employees knew that Tamara would not be able to obtain the same disability coverage as provided by its Long Term Disability Policy from another insurance company.

**ANSWER**:    Prudential   denies   the   allegations   of   Paragraph   168   of   Plaintiffs'

Complaint.

169.    (Incorrectly numbered by Plaintiffs as 129)  Prudential, its agents and employees, knew that Tamara was emotionally distraught because of its refusal to pay her claim for long term disability and she would not be able to purchase replacement coverage.

**ANSWER**:    Prudential   denies   the   allegations   of   Paragraph   169   of   Plaintiffs'

Complaint.

170.    (Incorrectly numbered by Plaintiffs as 130)  Prudential intended or knew that its refusal to pay any claims for long term disability of Tamara would cause her severe emotional distress.

**ANSWER**:    Prudential   denies   the   allegations   of   Paragraph   170   of   Plaintiffs'

Complaint.

171.    (Incorrectly numbered by Plaintiffs as 131)  Prudential intended or knew that its refusal to have the request of Tamara's claim for long term disability to be fairly reviewed would cause Tamara severe emotional distress.

**ANSWER**:    Prudential    denies    the    allegations    of    Paragraph    171    of    Plaintiffs'

Complaint.

172.    (Incorrectly numbered by Plaintiffs as 132)  Prudential, its agents and employees knew that Tamara was emotionally distraught because of its repeated violations of its statutory duties as set forth above.

**ANSWER**:    Prudential    denies    the    allegations    of    Paragraph    172    of    Plaintiffs'

Complaint.

173.    (Incorrectly numbered by Plaintiffs as 133)  Prudential, its agents and employees intended or knew that there was a high probability that its denial of long term disability in the matter stated above, would cause great financial hardship for Tamara and her family which would cause her great emotional distress.

**ANSWER**:    Prudential    denies    the    allegations    of    Paragraph    173    of    Plaintiffs'

Complaint.

174.    (Incorrectly numbered by Plaintiffs as 134)  The conduct of Prudential, its agents and employees, caused Tamara to become extremely and severely emotionally distressed, angered, upset and exposed her to economic hardship, causing her further consternation and severe emotional distress. Tamara has been diagnosed by qualified medical providers as clinically depressed and has been prescribed drugs for this condition. Further Prudential's conduct went beyond mere insult, indignity, annoyance, petty oppression or triviality when it denied her claim for long term disability benefits, and she will not be able to obtain equal replacement disability insurance coverage and this will cause her and her family great financial hardship. The clinical depression and emotional distress now suffered by Tamara was proximately aggravated by the conduct of Prudential set forth above

**ANSWER**:    Prudential    denies    the    allegations    of    Paragraph    174    of    Plaintiffs'

Complaint.

WHEREFORE, Prudential requests that this Court enter judgment in favor of Prudential,

and against Plaintiffs, and that this Court award to Prudential such other and further relief as this

Court deems just and equitable, including but not limited to an award to Prudential of its reasonable attorneys' fees and costs.

**COUNT VIII**

**Tamara's Claim for Statutory Costs and Penalties Pursuant to 215 ILCS § 5/155**

1-124. Tamara realleges the allegations of Paragraphs 1 through 124 of the common Allegations as Paragraphs 1 through 124 of Count VIII.

**ANSWER**:    Prudential incorporates by reference its responses to Paragraphs 1-124 of the Plaintiffs' Complaint as if fully set forth herein. To the extent any further answer to this Paragraph or the introductory Paragraph under Count VIII of Plaintiffs' Complaint is required it stands denied.

175 - 184.    (Incorrectly numbered by Plaintiffs as 125 - 134)  Tamara realleges the allegations of Paragraphs 125 through 134 of Count VII as Paragraphs 125 through 134 of Count VIII of this Complaint.

**ANSWER**:    Prudential incorporates by reference its responses to Paragraphs 165–174 of the Plaintiffs' Complaint as if fully set forth herein.  To the extent any further answer to this Paragraph is required, it stands denied.

185.    (Incorrectly numbered by Plaintiffs as 135)  Prudential had a duty to properly investigate Tamara's claim and the other duties set forth in 215 ILCS § 5/154.6, *et. seq*. and to promptly provide a reasonable and accurate explanation of its appeal procedures and how her claim was reviewed.

**ANSWER**:    The allegations in Paragraph 185 of Plaintiffs' Complaint contain conclusions of law to which no response is required by Prudential.  To the extent any further answer to this Paragraph is required, it stands denied.

186.    (Incorrectly numbered by Plaintiffs as 136)  Prudential failed to answer truthfully Tamara's inquiry about the reason for denial of her claim or provide any guidance or policy of how to appeal the denial of her claim.

**ANSWER**:    Prudential denies the allegations of Paragraph 186 of Plaintiffs' Complaint.

187.    (Incorrectly numbered by Plaintiffs as 137)   After the Quality Review Panel overruled its claim department's original denial of her claim, Prudential within 75 days (with no reasonable basis to believe Tamara's physical or mental condition had improved), began an investigation of Tamara's claim to find facts that it would use to terminate coverage previously granted. Even though Prudential had no evidence that Tamara's physical and emotional disabilities had improved or changed.

**ANSWER**:    Prudential denies the allegations of Paragraph 187 of Plaintiffs' Complaint.

188.    (Incorrectly numbered by Plaintiffs as 138)   Prudential terminated its finding that Tamara was eligible for catastrophic benefits and demanded repayment of over $7,000 in payments without ever telling Tamara the facts or policy provisions it relied on in making its determination that she was not eligible for catastrophic benefits.

**ANSWER**:    Prudential denies the allegations of Paragraph 188 of Plaintiffs' Complaint.

189.    (Incorrectly numbered by Plaintiffs as 139)   Prudential closed Tamara's claim file in violation of its on policy and practices because Tamara did not provide certain documents by a time certain after it told her that there was no time limitation for her to provide the requested documents or information.

**ANSWER**:    Prudential denies the allegations of Paragraph 189 of Plaintiffs' Complaint.

190.    (Incorrectly numbered by Plaintiffs as 140)   Prudential reviewed its denial of coverage for Tamara under the guise that she was requesting that her file be reopened, when it knew that she was appealing the denial of her claim for total disability.

**ANSWER**:    Prudential denies the allegations of Paragraph 190 of Plaintiffs' Complaint.

191.    (Incorrectly numbered by Plaintiffs as 141)   Prudential has failed to respond to Tamara's legitimate requests for information concerning its denial of her claim and refused to provide the following documents to her:

a.    All procedures, policies, memos of Prudential relating to when files of an insured long term disability are to be reviewed or investigated.

b.    The Curriculum Vitae, biography and any documents containing any information containing the formal education after high school or specialized training of each and every Prudential employee, agent or medical examiner who reviewed

Tamara's status as being permanently or long term disabled or Tamara's request to reopen her claim file.

c.      Copies of all guidelines, policies, procedures relied upon by any employee, agent, consultant, third party administrator in reports of any consultants or in making the decision that was unable to reopen Tamara's claim or her status of being permanently disabled or qualify for long term disability.

d.      All documents, invoices and itemized bills that indicate the amount of time spent and charges by any third party or outside consultant who reviewed Tamara's file or her claim.

e.      Copies of all contracts with any reviewer or outside consultant, third party review organization that were utilized by Prudential in reviewing Tamara's status as being permanently disabled or reaching any decision not to reopen Tamara's claim.

f.      All guidelines, etc., that Prudential uses in determining whether an insured's claim qualifies under the definition of disability under its policy.

g.      All guidelines, criteria, policies and procedures of Prudential relating to when after it grants temporary, permanent or long term disability benefits that this decision is to be reviewed, investigated or the file to be reopened.

h.      Any procedure for an external review of denial of a claim under this policy.

i.      All documents, criteria, memos, email, manuals, documents describing:

(i)     when and how QR is performed on a claim;

(ii)    the names, job descriptions, and curriculum vitae of all persons who were involved in the QR or Quality Review;

(iii)   what documents were reviewed by the person or persons who performed QR.

**ANSWER**:    Prudential denies the allegations of Paragraph 191 of Plaintiffs' Complaint and all subparts thereof.

192.    (Incorrectly numbered by Plaintiffs as 142)  Prudential's denial of benefits to Tamara is part of a pattern, history, and policy of this insurance company of denying benefits to its insureds if they had a claim for disability because they were suffering from Fibromyalgia.

**ANSWER**:    Prudential denies the allegations of Paragraph 192 of Plaintiffs' Complaint.

193.    (Incorrectly numbered by Plaintiffs as 143)  In denying or refusal to pay Tamara's request for benefits as set forth above, Prudential intentionally violated its statutory duties as set forth in 215 ILCS § 5/154.6(a), (b), (c), (d), (e), (f), (g), (h), (i), (n).

**ANSWER**:    The allegations in Paragraph 193 of Plaintiffs' Complaint contain conclusions of law to which no response is required by Prudential.  To the extent any further answer to this Paragraph is required, it stands denied.

194. (Incorrectly numbered by Plaintiffs as 144)  215 ILCS § 5/155 provides as follows:

§ 155. Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a)    60% of the amount which the court or jury finds such  party is entitled to recover against the company, exclusive of all costs;

(b)    $60,000;

(c)    the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

(d)    Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

**ANSWER**:    The allegations in Paragraph 194 purport to set forth the language of a legal statute.  The statute speaks for itself.  To the extent the allegations in Paragraph 194 are inconsistent with the statute, they stand denied.

195.    (Incorrectly numbered by Plaintiffs as 145) The above acts and omissions of Prudential in its refusal to pay Tamara's disability benefits, were unreasonable and vexatious.

**ANSWER**:    Prudential denies the allegations of Paragraph 195 of Plaintiffs' Complaint.

WHEREFORE, Prudential requests that this Court enter judgment in favor of Prudential, and against Plaintiffs, and that this Court award to Prudential such other and further relief as this

Court deems just and equitable, including but not limited to an award to Prudential of its reasonable attorneys' fees and costs.

## COUNT IX

### Dirk McCormick's Claim Under Illinois Marital Expense Act

Contemporaneously herewith, Prudential files a motion to dismiss Count IX of Plaintiffs' Complaint in its entirety and with prejudice and as such, makes no answer to the allegations contained in Count IX of Plaintiffs' Complaint.

WHEREFORE, Prudential requests that this Court enter judgment in favor of Prudential, and against Plaintiffs, and that this Court award to Prudential such other and further relief as this Court deems just and equitable, including but not limited to an award to Prudential of its reasonable attorneys' fees and costs.

## AFFIRMATIVE DEFENSES

Without admitting or acknowledging that Defendant bears the burden of proof as to any of them, Defendant asserts the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a cause of action upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims should be dismissed, in whole or in part, because Prudential did not breach any legal duty owed to Plaintiffs.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims for relief are barred, in whole or in part, because Prudential acted in good faith and in accordance with the Policy at all times.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' rights and remedies are limited by the exclusive terms of the Policy, including but not limited to the terms of the Policy for which a limited pay period may apply.

## FIFTH AFFIRMATIVE DEFENSE

The Policy is a written document, and as such, is the best evidence of the terms thereof.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff Tamara McCormick is not entitled to benefits as she has failed to satisfy the conditions precedent to coverage and eligibility for benefits as set forth in the Policy.

## SEVENTH AFFIRMATIVE DEFENSE

To the extent a determination is made that Plaintiff Tamara McCormick is "disabled" as defined by the terms of the Policy (which she is not), any past and future LTD benefits will be offset by any payments received for Social Security disability benefits and by any other Deductible Sources of Income as set forth in the Policy.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the applicable statutory or contractual limitations period.

## NINTH AFFIRMATIVE DEFENSE

Prudential reserves the right to raise additional affirmative defenses as may be discovered during the course of the proceedings.

WHEREFORE, Prudential requests judgment in its favor and against the Plaintiffs as follows:

(1) Dismissing Plaintiffs' Complaint with prejudice;

(2) Awarding Prudential its costs and reasonable attorney's fees; and

(3) Granting Prudential such other and further relief legal and equitable relief as this

Court may deem just and proper.

Respectfully Submitted,

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant**

By:     */s/ Edna S. Bailey*
                    One of Its attorneys

Edna S. Bailey
WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER LLP
55 West Monroe Street, Suite 3800
Chicago, IL 60603
(312) 704-0550
(312) 704-1522
edna.bailey@wilsonelser.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on August 2, 2010, she electronically filed the forgoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**R Gerald Barris**    **rgbarris@sorlinglaw.com, bjbiondolino@sorlinglaw.com**

**Silas L McCormick**    **slmccormick@sorlinglaw.com**


       */s/ Edna S. Bailey*
Edna S. Bailey, IL6277775
**Attorney for Defendant The Prudential**
**Insurance Company of America**
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
55 West Monroe Street, Suite 3800
Chicago, Illinois 60603
(312) 704-0550
(312) 704-1522
edna.bailey@wilsonelser.com

742066.1